

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

Gerald C. Mann
~~xMildxxkxMxxxxxxxx~~
ATTORNEY GENERAL

Honorable J. C. McEvoy
County Attorney
Waller County
Hempstead, Texas

Dear Sir:

Opinion No. 0-4247
Re: Consolidation of school dis-
tricts and payment of attor-
ney's fee for contest of con-
solidation election.

We have received your letter of recent date in which you pre-
sent the following information:

On May 10, 1941, an election was held to determine whether
Macedonia Common School District No. One of Waller County should
consolidate for school purposes with Waller Consolidated Independent
School District. The Commissioners' Court of Waller County on May 12,
1941, canvassed the results of the election, declared that the election re-
sulted in favor of the consolidation, and declared the districts consolidated.

On May 19, 1941, the three individual trustees of the Macedonia
district, individually and as district trustees, filed their notice of intention
to contest the election. The case ultimately went to trial, resulting in a
judgment finding that the election resulted in a tie vote in the Macedonia
district and declaring that the order of the Commissioners' Court did not
effect a consolidation. During these proceedings the contestants were
represented by an attorney at law, and in payment of his fee, a warrant
for $250.00 was issued against the funds of the Macedonia district at the
instance of the trustee in their official capacity. Such warrant has been
presented to the County Superintendent of Waller County for approval.

In connection with the facts outlined above, you ask the following
question:

"(1) Is the above described warrant in the amount of $250.00,
and issued for the purpose of paying attorney's fees for contesting
a school consolidation election, a 'legally drawn voucher' requiring
her to approve the same ?"

As we do not have a copy of the warrant we interpret your question to be, "May the trustees of the common school district pay with school funds the attorney's fees under the facts as outlined?"

In your brief you cite the case of Tate et al v. Farmer, Co. Atty., et al., 112 S. W. (2d) 782. We think that this case is very helpful in answering the above quoted question. The suit was instituted by Tate and Riggins, as trustees, and by two other individuals, as taxpaying voters, to contest "that election and the action of the court in consolidating the two districts in decreeing the consolidation." In holding that the trustees were authorized to institute the suit the court made the following statement:

"Since, by article 2748 of our Statutes, the trustees of a common school district are made a body politic and corporate, with power to sue and be sued, the two trustees who constituted a majority of the board had authority to institute the suit, even though it should be said that others who joined with them as taxpayers and citizens did not have the right to contest the election for lack of justiciable interest therein, separate from the interest of the public; nor was there any plea of misjoinder of them in the contest."

The case of Arrington et al v. Jones et al, 191 S. W. 361, discussed the authority of school district trustees to hire an attorney to bring an action to cancel a teaching contract. After holding that the trustees had such authority, the court made the following statement:

"Since the trustees have, as we think, the power to employ an attorney to represent them in legal proceedings respecting school affairs, the authority would exist to pay such attorney reasonable compensation out of the special maintenance school fund in the management and control of the trustees. Article 2772, Vernon's Sayles Statutes (Article 2827, R. C.S., 1925)" See also Stewart v. Newton Ind. Sch. Dist., 134 S. W. (2d) 429.

Under the Tate case the trustees in question were authorized to contest the election, and thus to employ an attorney. Under the Arrington case they are authorized to pay him for his services.

Therefore, it is our opinion that the trustees were authorized to execute the warrant, and your first question is answered accordingly.

After the decision was rendered in the election contest case but before judgment was entered, two petitions were presented to the County Judge of Waller County, one signed by the qualified voters of the Macedonia district and the other, by the qualified voters of the Waller district, requesting an election to determine whether the districts should be consolidated for school purposes. Judgment in the contest case was entered several days thereafter, and the contestees gave notice of appeal, which was subsequently abandoned.

Thereafter, on November 17, 1941, a petition addressed to the County Board of School Trustees and signed by the requisite number of qualified voters of the Macedonia district was presented to the County Superintendent who is Secretary of the County Board, requesting that an election be held in the Macedonia district and in the Magnolia Common School District No. 6 of Montgomery County, which is adjacent to the Macedonia district. A similar petition was filed with the County Board of School Trustees of Montgomery County, which board has expressed its willingness to cooperate with the Waller County Board in the calling of an election. The County Judge of Waller County has ordered an election on the petition presented to him.

In connection with this fact situation you request the opinion of this department on the following questions:

"(2) Is the Waller County Board of School Trustees deprived of jurisdiction to act upon the petition presented to it by reason of the prior filing of the other petitions with the County Judge of Waller County, Texas?

"(3) If said Waller County Board of School Trustees has jurisdiction to act upon the petition presented to it, then which election - the Waller-Macedonia consolidation election, or the Magnolia-Macedonia consolidation election - would control in the event both elections resulted in favor of consolidation?"

We are informed that the Waller Consolidated Independent School District is a county line district. At the outset, therefore, it becomes necessary for us to determine whether there exists authority for the consolidation of a county line independent school district with a contiguous common school

district. The Macedonia district lies wholly within Waller County, and the Waller district lies partly in Waller and partly in Harris County. However, Waller County has jurisdiction over the administration of the Waller district. If it is determined that the districts may be consolidated, then the question is presented whether the consent of the officials of both Harris and Waller Counties is necessary before an election can legally be ordered.

Article 2806, Vernon's Annotated Civil Statutes, reads as follows:

"On the petition of twenty (20) or a majority of the legally qualified voters of each of several contiguous common school districts, or contiguous independent school districts, praying for the consolidation of such districts for school purposes, the County Judge shall issue an order for an election to be held on the same day in each such district. The County Judge shall give notice of the date of such elections by publication of the order in some newspaper published in the county for twenty (20) days prior to the date on which such elections are ordered, or by posting a notice of such elections in each of the districts, or by both such publication and posted notice. The Commissioners' Court shall at its next meeting canvass the returns of such elections, and if the votes cast in each and all districts show a majority in each district voting separately in favor of such consolidation, the Court shall declare the school districts consolidated.

"Common school districts may in like manner be consolidated with contiguous independent school districts, and the district so created shall be known by the name of the independent school district included therein, and the management of the new district shall be under the existing board of trustees of the independent school district, and all the rights and privileges granted to independent districts by the laws of this State shall be given to the consolidated independent district created under the provisions of this law; provided, that when two or more independent districts are consolidated, the County Board of Trustees shall designate the name by which the said district shall be known, and shall appoint a board of seven trustees for the said consolidated district, to serve until the next regular election of trustees, as prescribed by General Law, at which time

the district shall elect a board of seven trustees, whose powers, duties and terms of office shall be in accordance with the provisions of the General Law governing independent districts, as they now exist or may hereafter be enacted; provided further, that when it is proposed to consolidate contiguous county line districts, the petitions and election orders prescribed in this Act shall be addressed to and issued by the County Judge of the County having jurisdiction over the principal school of each district and the results of the election shall be canvassed by the Commissioners' Court of the said county.

"The term 'district' as used in this and the succeeding nine articles means 'consolidated common school districts' or 'consolidated independent school district.'"

In the case of Stephen v. Coffee, 133 S. W. (2) 184, the following fact situation was before the court. The county judge of Shackelford County had ordered an election to determine whether the Ibex Independent School District should consolidate with the Albany Independent School District. The Albany district lay entirely within Shackelford County, and the Ibex District was a county line district, located partly in Shackelford County and partly in Stephens County. The administrative control of the Ibex district was assumed by Shackelford County. The result of the election, as declared, was a tie in the Ibex district; thereupon the appellants instituted this suit, a statutory contest of the election, claiming that if certain alleged illegal votes were excluded, the election would result in a majority vote in favor of the consolidation. No consent had been asked or obtained by the County Judge of Shackelford County, or anyone else, from the officers of Stephens County.

Because of the similarity of facts involved in the Stephens case with those under consideration, we quote at length from the opinion of the court, speaking through Justice Funderburk, as follows:

"We are of the opinion, however, that it was not shown that the election was void on the ground presented by the plea to the jurisdiction. The authority undoubtedly exists for the consolidation of two contiguous independent school districts. R. S. 1925, Art. 2806, Vernon's Ann. Civ. St., art. 2806. Is such authority affected by the fact that one of the districts has territory lying in a different county? We think no good authority

can be found to support that proposition. Shackelford County School authorities assumed, and had for a long time exercised control and jurisdiction over the Ibex Independent School District, and that, if material, is as much as need appear. Jurisdiction in fact and right of administration, will be presumed.

"Said Art. 2806 in authorizing consolidations of school districts expressly names 'contiguous independent school districts.' A proviso in the article is 'that when it is proposed to consolidate contiguous county line districts the petitions and election orders prescribed in this Act shall be addressed to and issued by the County Judge of the County having jurisdiction and the results of the election shall be canvassed by the Commissioners' Court of the said county.' The proposed consolidation out of which this contest arises did not involve a proposition 'to consolidate contiguous county line districts' as to which the law, as quoted above, provides that the 'petitions and election orders . . . shall be addressed to and issued by the County Judge of the County having jurisdiction over the principal school of each district' etc. That proviso by its terms relates to the consolidation of county line districts with county line districts. But even if said proviso applied, it is nevertheless true that the County Judge who ordered the two elections involved in the proposed consolidation was 'the County Judge of the county having jurisdiction over the principal school of each district;' since the Ibex Independent School District had but one school, and that located in Shackelford County, the same as the principal school of the other district. The Commissioners' Court which declared the result of the elections so ordered and held was the Commissioners' Court of the same county.

"Revised Statutes, 1925, art. 2744, and the provision therein reading: 'Such district shall not be changed or abolished except by the consent of the commissioners' court of each county having territory contained therein' does not affect the question. For one reason, that statute by its terms applies only to 'common county line school districts.' No such district is here involved. Another reason is that said provision of Art. 2744 was enacted in 1911, while even as late as the 1925 Revision of the statutes, Art. 2806 did not include authority, as it was subsequently amended to do, for the consolidation of two independent school districts. Such subsequent amendment must be given effect even if to do so requires us to hold that it repealed said provision of Art. 2744, as applied to the situation here presented."

Thus, in the situation under consideration, authority exists for the consolidation of a common school district with a contiguous independent school district. Art. 2806, supra. Therefore, under the holding of Justice Funderburk, such authority is not affected by the fact that one of the districts has territory lying in a different county and the county judge to whom the petitions were presented and who ordered the elections was the county judge of the county having jurisdiction over the county line district and within which the other district completely lies. The consent of the officials of the other county, under the holding, was not required.

This view is strengthened by the recent case of Hunt v. Trimble, 145 S. W. (2d) 659 (W. E. Ref.). In this case plaintiffs sued to enjoin the County Judge, County Attorney and County Commissioners of Wheeler County from entering any orders consolidating a common county line school district with an independent school district and to declare void two elections held in connection with the purported consolidation, one upon the issue of consolidation and the other upon the assumption of bonded indebtedness.

The independent school district lay wholly within Wheeler County, and that county had jurisdiction over the county line district for administrative purposes. The petitions were presented to the County Judge of Wheeler County, and he issued orders calling for the elections. No action was taken by the County Judge, Commissioners' Court, or County Board of Gray County, the adjacent county, nor was their consent to the consolidation obtained. In speaking of Article 2806, the court makes the following statement:

" * * * In this Act the consent of no one is required, not even the consent of the county judge issuing the election orders nor the commissioners' court or any other officials of his or any other county. The natural import of this provision is that the only consent necessary to the consolidation is that of the voters expressed in an election called for such purpose. The will of the voters being the paramount concern of the Legislature the manner of obtaining such expression is of little importance. * * *"

This case held that the consent of the county officials of the other county was not necessary. We realize that the county line district involved in the Hunt case was a common school district so that Article 2742b, Section 5, V. A. C. S., as well as Article 2806, supra, applied. Even so, reading

the Hunt and the Stephens case together, we are of the opinion that a county line independent school district may be consolidated with a contiguous common school district. Where the county judge of the county having jurisdiction over both such districts upon proper petitions therefor orders an election to determine whether the schools shall consolidate for school purposes, the consent of the officials of the adjacent county, in which part of the county line district lies, is not required; and if the votes cast at such election show a majority in each district voting separately in favor of such consolidation, then the school districts may legally be declared consolidated without such consent.

Our view is further strengthened by Article 7806b, Vernon's Annotated Civil Statutes, passed in 1937 by the 45th Legislature. Section 1 of Article 2806b reads as follows:

"Section 1. That all county line independent school districts in this State heretofore attempted to be organized and established, and now functioning as such, and recognized by either State or county authorities as such school districts, and which were attempted to be organized and established by a vote of the people at an election held in each district affected for the purpose of consolidating an existing county line independent school district with an existing contiguous common school district, and at which election there was an affirmative vote in each school district in favor of such consolidation, are hereby validated in all respects, as though such district or districts had been duly and legally established in the first instance, notwithstanding the fact that such election on the question of consolidation so held in such existing independent school district or districts may have been ordered, notices thereof given, and the results thereof declared by a Board of Trustees of such existing county line independent school district or districts instead of by the Commissioners' Court as provided by Article 2806 of the Revised Civil Statutes of Texas, of 1925." (Emphasis supplied)

The language used in this section indicates that such consolidation elections should follow the provisions of Article 2806, and that there was no authority to organize districts by an election ordered by the county board. The districts falling within the latter named class were validated by the statute.

We are not unmindful that apparently inconsistent views have been taken by some of our appellate courts, so that the position we have taken is not entirely free from doubt. See Newsome v. Elliott, 139 S. W. (2d) 221; Benton v. Long, 128 S. W. (2d) 446; County School Trustees of Runnels County v. State, 95 S. W. (2d) 1001. However, the Hunt case is the most recent one on the subject; the Hunt case cites with approval the Stephens case, and the Supreme Court of Texas refused a writ of error in the Hunt case. These factors impel us to the conclusion which we have reached and which is expressed above.

The next question which confronts us is whether the filing of the petition with the county judge after the decision was rendered but before the entry of the judgment and abandonment of the appeal was in reality a nullity because of the fact that the district court still retained jurisdiction over the subject matter, and, as a nullity, could not be subsequently revived. It has been held by this department that no particular time must elapse or intervene between the filing of petitions to consolidate school districts. Opinion No. 0-2266. Did the jurisdiction of the district court in the election contest proceedings attach to more than the particular election in contest? Did such jurisdiction attach to the filing of other petitions or the holding of subsequent elections? We think not. True, all the matters relating to the contested election itself were within the jurisdiction of the court, but wholly independent matters could not be said to be covered by such jurisdiction. Therefore, we are of the opinion that petitions could validly be presented to the county judge so that his jurisdiction to order consolidation elections would be invoked, and in this particular case to empower the county judge upon the filing with him of a proper petition to order an election if the contested election were not upheld.

The next question that we must answer is whether the petitions presented to the county judge must affirmatively show the location of the districts, that they are contiguous, whether one is a county line district, and if county line, what county has jurisdiction over its administration. You will notice that the only express requirement in either Article 2806 or in Section 5b of Art. 2742b is that the county judge shall issue an order for an election "on the petition of twenty (20) or a majority of the legally qualified voters. . . ." Of course, if the school district is in another county, the county judge would have no power to call an election in such other county. Yet, if the district is in fact in the county or partially

in the county having jurisdiction over its administration, would the fact that the petition does not affirmatively show the same deprive the county judge of his authority to order or the voters of their right to have a consolidation election? We think not. Chief Justice Gaines speaking for the Supreme Court of Texas in the case of Scarborough et al v. Eubank, 93 Tex. 106, made the following statement:

" * * * The object of a popular election is that the will of the greater number of the voters may prevail. This greater number may be a plurality or a majority in a greater or less degree, as the law may provide for the particular case. Hence the important matter in every election is that the will of the voters should be fairly expressed, correctly declared, and legally enforced. Compared to this, the question as to the manner and time of ordering the election is of trivial moment. Ordinarily, when elections are to be held which recur at stated periods (such as those for the election of officers to administer the government), it is made the duty of certain officials to call the election without action on part of any person. But in all elections of a local option character (such as for prohibiting the sale of intoxicating liquors, to prevent the running at large of livestock, the removal of county seats, and the incorporation of towns and cities) it is essential, in order to give effect to the laws which provide for such elections, that some officer, board, or tribunal should be empowered to order the election, and that it should be made a duty so to order it upon the occurrence of certain conditions, -- usually the presentation of a petition, signed by a certain number of legal voters, freeholders, or taxpayers, according to the nature of the matter upon which the vote is to be taken * * * The main, if not sole, purpose of requiring the petition in favor of a change before ordering an election is to save the public from the expense, loss of time, and excitement incident to such an election, unless there is a reasonable probability that the required majority of electors will vote for the change."

In the situation under consideration, if the petitions were signed by the requisite number of qualified voters, then we are of the opinion that the county judge would be authorized to call the election. We do not feel justified to read something into the statute which is not there, especially in view of the following facts: the Macedonia district is wholly within Waller County; Waller County has jurisdiction over the administration of the Waller district;

the petitions were signed by the required number of legally qualified voters; and the voters in each district will be notified by publication or by posting notice of the election, and will be able to express their will at the election.

You ask whether the respective county boards of school trustees are prevented from acting on the petitions presented to them by reason of the prior filing of the other petitions with the county judge. We quote from our Opinion No. 0-778 as follows:

"Our Supreme Court in State, ex rel George vs. Baker, 40 S. W. (2d) 41, held:

"'To our minds, this suit presents but one question: Did the County Board of Trustees have the power to defeat the right of the people to, by vote, determine the question as to whether the district should be incorporated by re-districting the territory involved after the election has been duly and legally ordered and advertised, and while such election was still pending? We think that to state the question is to give a negative answer thereto.

"'It is our opinion, that even if it be conceded that the orders of the County Board with reference to the territory of District #16 would have been in all respects legal in the absence of the pending election, still the right of the people to vote on incorporation, having been first lawfully invoked, would not be interfered with or defeated by the County Board pending the holding of the election, and the declaration of its results.'

"We recognize that the foregoing case is not specifically in point, but the situations are somewhat analogous. When an election has been called and the right of the people to vote upon the question of whether two districts shall consolidate, has attached, their right to freely express their will should not be interfered with or embarrassed by calling a second election to determine whether one of these districts should consolidate with a third. We find no authority in the statutes for holding both elections at the same time as suggested in your letter."

You are, therefore, advised that the county board of school trustees should not call an election based on the Macedonia-Magnolia petition

until the electorate of the Waller and Macedonia districts have had an opportunity to vote upon the question whether the Waller and Macedonia districts shall consolidate. If the Waller-Macedonia election carries and the districts are consolidated, then the county boards would have no authority to call an election based on the Macedonia-Magnolia petitions.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *George W. Sparks*
George W. Sparks
Assistant

APPROVED DEC 31, 1941

*Grover Sellers*

FIRST ASSISTANT
ATTORNEY GENERAL

GWS:ej

APPROVED
OPINION
COMMITTEE
By *Buts*
Chairman